McCLENDON, J.
| ¡¿Plaintiffs appeal the judgment of the trial court granting defendant’s peremptory exceptions raising the objections of no right of action and no cause of action. We affirm.
FACTS AND PROCEDURAL HISTORY
On February 5, 2004, the law firm of Richie, Richie & Oberle, L.L.P., C. Vernon Richie, Byron A. Richie, Laurel Fleming Richie, and Paul D. Oberle, Jr., filed a Petition for Damages against the Louisiana Insurance Guaranty Association (LIGA), alleging that since 1991, plaintiffs have engaged in statewide insurance defense and that one of plaintiffs’ largest clients was Patterson Insurance Company. Plaintiffs further assert that they handled virtually all of Patterson’s litigation claims in the State of Louisiana. Patterson was placed into liquidation by order of the 19th Judicial District Court on March 17, 2003, at which time plaintiffs had approximately 620 open litigation files of Patterson. Plaintiffs further allege that at the time of liquidation, plaintiffs, although eligible, had not applied nor been approved as counsel for LIGA. Plaintiffs contend that LIGA was operating under a Plan of Operation, which provided that when an insurer was declared insolvent, an attorney with open files, but not on the approved LIGA list, would be given the opportunity to submit an application to the attorney selection *17 committee. Plaintiffs allege that they promptly submitted their application to the attorney selection committee; however, because of LIGA’s unreasonable and unnecessary delay of plaintiffs’ application process, by the time they were approved, LIGA had unlawfully, inappropriately and unnecessarily reassigned all of plaintiffs’ Patterson litigation files to other legal counsel. Plaintiffs conclude by alleging that LIGA violated its Plan of 1 ^Operation and legislative mandate, causing financial loss and damages to plaintiffs.
LIGA objected to plaintiffs’ petition by filing the peremptory exceptions of no right and no cause of action. Following a hearing, oral reasons for judgment were given by the trial court on August 31, 2004, granting LIGA’s exceptions. Judgment was signed on September 24, 2004.
Plaintiffs appealed submitting the following assignments of error:
1) The trial court abused its discretion in finding as a matter of fact that the plaintiff law firm was given a meaningful opportunity to submit an application to the attorney selection committee and be considered for the continuing handling of association lawsuits, particularly the Patterson files at issue.
2) The trial court erred as a matter of law in concluding that LIGA’s actions were not in violation of the law.
3) The trial court erred as a matter of law in concluding that LIGA is absolutely immune from any suit pursuant to LSA-R.S. 22:1391.
4) The trial court erred as a matter of law in concluding that plaintiffs have no right and/or cause’ of action against LIGA to require LIGA to follow the Plan of Operation in the reassignment of its files, particularly the Patterson files at issue.
DISCUSSION
The Insurance Guaranty Association Law, LSA-R.S. 22:1375, et seq., was enacted by the legislature in 1970. Its purpose is stated in LSA-R.S. 22:1376, which provides:
The purpose of this Part is to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies and to allow the association to provide financial assistance to member insurers under rehabilitation or liquidation, and to provide an association to assess the cost of such operations among insurers.
RPursuant to LSA-R.S. 22:1380, the Insurance Guaranty Association Law is administered by LIGA, with certain powers and duties to accomplish its purpose. See LSA-R.S. 22:1380 and 1382.
Further, the legislature has granted statutory immunity to LIGA in matters relating to the performance of its duties. LSA-R.S. 22:1391. Louisiana Revised Statute 22:1391 provides:
There shall be no liability on the part of and no cause of action of any nature shall arise against any member insurer, the association or its agents or employees, the board of directors, or the commissioner or his representatives for any action taken by them in the performance of their powers and duties under this Part.
This statute grants LIGA complete immunity in all matters relating to the performance of its duties. Caulfield v. Leonard, 95-1043, p. 4 (La.App. 5 Cir. 6/25/96), 676 So.2d 1117, 1119, writ denied, 96-1911 (La.11/1/96), 681 So.2d 1262.
*18 In the present case, the trial court determined that LIGA is immune from suit pursuant to LSA-R.S. 22:1391, stating in its oral reasons for judgment that “[sjince the allegations stem from the reassignment of the Patterson cases following insolvency and this is encompassed within LIGA’s powers and duties, LIGA is thus immune from liability.”
Plaintiffs assert, however, that this litigation has nothing to do with LIGA’s performance of its powers and duties; rather, according to plaintiffs, this litigation addresses LIGA’s non-performance of its powers and duties that are mandatory under the Plan of Operation. However, LSA-R.S. 22:1391 is a broad grant of immunity to LIGA for any “cause of action of any nature.” Caulfield, 95-1043 at p. 5, 676 So.2d at 1120.
Plaintiffs argue that any absolute immunity LIGA had was limited by LSA-R.S. 9:2798.1 as held in Gregor v. Argenot Great Central Insurance Company, 02-1138 (La.5/20/03), 851 So.2d 959. LIGA correctly counters that the blanket immunity found in LSA-R.S. 22:1391 is broader than that granted to the State and state agencies pursuant to LSA-R.S. 9:2798.1, which only provides qualified immunity for discretionary actions.[1] See Gregor, 02-1138 at p. 7, 851 So.2d at 964. Further, LSA-R.S. 22:1380 expressly provides that LIGA is not a department, unit, agency or instrumentality of the State for any purpose.[2]
Moreover, pursuant to general rules of statutory construction, “where two statutes deal with the same subject matter, they should be harmonized if possible; however, if there is a conflict, the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character.” Filson v. Windsor Court Hotel, 04-2893, p. 4 (La.6/29/05), 907 So.2d 723, 726 (quoting City of Pineville v. American Federation of State, County, and Municipal Employees, AFL-CIO, Local 3352, 00-1983, p. 4 (La.6/29/01), 791 So.2d 609, 612).
Plaintiffs also make the argument that LSA-R.S. 22:1382 B(3) permits LIGA to be sued in this matter. This statute provides, in pertinent part:
B. The association may:
JjL ⅜ * *
(3) Sue or be sued. The power to sue includes the power and right to intervene as a party before any court in this state that has jurisdiction over an insolvent insurer.
The statutory language however contemplates only those obligations arising from the contractual relationship between the parties to the insurance policy. See Williams v. Champion Ins. Co., 590 So.2d *19 736, 737-38 (La.App. 3 Cir.1991). These contractual relationships clearly do not encompass the selection of attorneys to represent LIGA. This argument is without merit.
The grant of immunity legislatively given to LIGA is specific and direct as to the matter at issue. Consequently, LIGA correctly objected to the lawsuit and the trial court did not err in determining that plaintiffs have no cause or right of action against LIGA for the reallotment of its files.
Because we find this issue decisive, we pretermit discussion of plaintiffs remaining assignments of error.
CONCLUSION
The judgment of the trial court maintaining the peremptory exceptions raising the objections of no right of action and no cause of action in favor of the Louisiana Insurance Guaranty Association is affirmed. Costs of this appeal are assessed against the plaintiffs.
AFFIRMED.

. LSA-R.S. 9:2798.1 B provides:
Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policy-making or discretionary acts when such acts are within the course and scope of their lawful powers and duties.

. LSA-R.S. 22:1380 B provides:
The association is not and may not be deemed a department, unit, agency, or instrumentality of the state for any purpose. All debts, claims, obligations, and liabilities of the association, whenever incurred, shall be the debts, claims, obligations, and liabilities of the association only and not of the state, its agencies, instrumentalities, officers, or employees. Association monies may not be considered part of the general fund of the state. The state may not budget for or provide general fund appropriations to the association, and the debts, claims, obligations, and liabilities of the association may not be considered to be a debt of the state or a pledge of its credit.